Good morning, your honors. I'm Lloyd Bookman here on behalf of PAMC, Ltd., also known as Pacific Alliance Medical Center, which I'll refer to today as PAMC. This case, of course, concerns the submission of data to the Medicare program, certain quality data. Hospitals are required to submit the data to the Medicare program in the form and manner at the time specified by the Secretary of HHS. And for 2007, this included the quarterly submission of core measures. PAMC submitted the data timely and properly for three out of the four quarters. There's no dispute about that. However, there is a dispute and there is an issue that was created for the second quarter of 2007. And in the second quarter, I take it there's no factual dispute that the submission was, in fact, late. That is correct, your honor. Initially, until the eve of the hearing, we had thought that the data had actually been submitted under an incorrect provider number. But so far as we know, that didn't happen. Well, I guess maybe I have a simplistic view of this, but I'd like you to indulge me for a minute. It seems to me that if you have a claim, it's against the intermediary that was supposed to file this on time, the regulation is completely clear. There's a deadline. You missed the deadline. There's a stated result for missing the deadline. And, you know, if someone was supposed to do it on time and they didn't, maybe they're at fault. But I don't really understand your position vis-a-vis the Secretary. Okay. Well, let me then try to explain that. And we do understand the potential exposure that the contractor has. There are always issues with proceeding in that manner. The question is, does the – there are two – we have two, as you noted from the brief, two theories to support the notion that the deadline is not immutable. There's a deadline. There's a consequence. But is there the ability to get relief from that deadline? Well, you're dealing here with administrative law, and I think that's where I disconnect from your arguments. I'm just speaking for myself, obviously. The principles of administrative law are not the same as the principles of equity or contract law, and we ordinarily defer to an agency's interpretation of its own regulation. And so if the agency says, look, a deadline is a deadline, we really mean it, why wouldn't we have to defer to that under the principles of power versus promise? I disagree with your conclusion that the agency has said a deadline is a deadline and we can't move the deadline. The Secretary has recognized in the Federal Register and in sub-regulatory materials, as well as in CMS, Centers for Medicare and Medicaid Services, and correspondences in the record, that for certain reasons they will move the deadline, that they will accept untimely submissions. The reason is that they've fouled up. That is one of the reasons. We have, if you look at the problem is there's a reconsideration and appeal process. There is very little that's been published as to what the grounds for relief are under that process, except one statement in the Federal Register that does say relief is available if the federal government makes a mistake and causes the untimely submission. Yeah, exactly. And that seems pretty simple. But it seems, let's be simple and fair, but if the deadline was fixed in concrete, that grounds for relief. Okay. Let's say the federal government fouls up and, therefore, you can't get this stuff on file because the government did something wrong. Can I somehow visualize the case that will be coming? Case. We didn't submit it to the secretary on time because the secretary wouldn't let us. They fouled up. Ergo, it's arbitrary and capricious to say you must submit it on time, but we won't let you submit it on time because we fouled up, and, therefore, you lose. That doesn't seem to be even a minuscule erosion of the concept that you must be on time. I understand that, Your Honor. And that's not even almost equitable. It's just we fouled up. We gave you the wrong time or we did something else wrong. Well, let me respond by saying two things. First, if you look at the Provider Reimbursement Review Board's decision, which is the final decision of the secretary in this matter, and, therefore, incorporates the secretary's interpretation of the Medicare Act and the secretary's regulations, there is a statement that says CMS has the equitable discretion to excuse the deadline for certain reasons. That seems to me to be the interpretation of the secretary of the statute. That interpretation may be entitled to deference under Chevron, but it is a statement by the secretary. Why Chevron? Where is the statutory interpretation? Interpreting the statute that says the data must be submitted within the time specified. Right, but then the time is specified by why I understand what you're saying. And then the consequence is also in the statute, the 2% reduction. So whether it's Chevron or it's an interpretation of a regulation under Thomas Jefferson is almost not important. The important point is that in the PRB's decision, which is, again, the secretary's final decision, there's a recognition that there's an equitable discretion. And the PRB decided we don't have equitable jurisdiction. We can't apply rules of equity, so we're just not going to consider the issue. What's your best case? I mean, do you have a case that supports your argument in that respect? Candidly, Your Honor, there is no case that's close that we've been able to locate that supports the argument. I mean, we've drawn on notions of relief from forfeiture and those sorts of things. But in terms of a case that is very close, we haven't found it. I haven't found cases that go the other way either. How often does this happen? Do you know? How often do people miss the deadline on this issue? Yes, under this circumstance. I don't know how often. Our office has had four or five cases related to the deadline being missed around the country. I don't know how many. And I don't know what the reasons are. I mean, there are a variety of reasons. We've had everything from, oh, we left it on the loading dock to our vendor messed up. Two CMS actually made a mistake. But I don't know how many. There are more than a handful, but it's a small percentage of the time that the deadlines were missed. So our basic point is, so one is the PRB statement in the final decision. And secondly, there's the, when we got information pursuant to the Affirmative Information Act to say, tell us about this reconsideration process. What are the grounds? There's a reconsideration process, but you haven't told us what the grounds are in the regulation or in the Federal Register. We get back these check-the-box forms from CMS that seems to set forth their sub-regulatory grounds for relief. And on the grounds for granting relief, there's CMS guidance and that sort of thing. And then there's a box called Other. Well, we don't know what Other means. And nobody knows what Other means. But that, if an agency puts a ground called Other as one of the bases upon which it can grant relief, that suggests to us that there is more than just CMS error. That there is a... Well, there might be act of God. I mean, we got a motion in a case I'm on saying that our deadline was the day when the government was shut down because of the snowstorm and the electricity was out and nobody was allowed to go to work to file this. I mean, that's Other, but it's not exactly your kind of situation and it doesn't really suggest broad-ranging... I mean, it could be any... Other can mean anything, but the fact that it's there doesn't seem to me to say very much. To us, the fact that it's there suggests that there is, again, combined with what the Secretary said or the PRB said in the decision, that there is discretion and it was up to the PRB to decide in the first instance whether CMS in its reconsideration determination exercised that discretion appropriately, and we don't. Well, whether it was arbitrary and capricious, right? I mean, you have to meet that standard. No, the first standard, the process is CMS makes a decision on our reconsideration request. If we disagree with that decision, we can appeal to the PRB, which is still part of the administrative agency. It's not the board isn't restricted to an arbitrary and capricious standard once it's reviewing what another part of the agency did, I don't believe. The board is then able to review it on a more preponderance of the evidence type standard. But our review of the agency's decision, isn't Judge Merguia correct that in terms of our review, you would have to be persuaded that the agency acted in an arbitrary and capricious manner? That is correct, Your Honor. And the first step in that is whether the PRB did what it was supposed to do. Did the PRB review the equitable merits of the situation or did it not? It did not because it said we don't have our own equitable jurisdiction. So you don't, frankly, Your Honor, you don't have to reach the question of the substantive merits here. You have to reach the question initially as to whether the PRB did what it was supposed to do, whether it exercised its jurisdiction appropriately and considered whether balancing the equities or looking at the equities here, relief should have been given, and that it did not do. It's different than asking whether substantively the decision was arbitrary and capricious. So we think in the first instance the PRB needed to have done its job and it did not do it because it said we don't have equitable jurisdiction, when in fact we're not asking the board to exercise its own equitable jurisdiction. We're asking the board to review the propriety of what CMS did in considering the reconsideration request, which is exactly what the appeal process requires. So we think the PRB erred by not considering the equitable merits. We think the process has been devised so that there is room for these sorts of equitable considerations and equitable relief. We think the statute, in fact, where it says in the time specified by the Secretary, well, if the Secretary adopts a process that allows that time to have some flexibility or some excuses for missing the initial deadline, that's still within the time specified by the Secretary, because the time specified by the Secretary includes the totality of the process in our view. You have about three minutes remaining. Did you wish to say rebuttal? Just apparently you're not terribly impressed by the substantial performance argument, but we do think there's a contract basis. There is a contract. The provider agreement says that obligates the provider to comply with the Medicare Act and regulations. That we substantially perform. That gives rise to the notion that contract principles apply, and we substantially perform. I'll reserve the rest of my time for rebuttal. Thank you. You may do that. Good morning. I'm Stephanie Marcus from the Department of Justice, and I represent Appley Kathleen Sebelius, Secretary of HHS. In this case, plaintiff concededly missed the deadline for submitting quality measure data, and under the applicable statute and regulations, the agency properly imposed the 2% reduction in the market basket update. Here, the reason for the missing the deadline was the error of Thompson, a third-party vendor hired by the plaintiff, and the Secretary has made clear in the Federal Register that such third-party vendor error is attributable to the hospital, and the board does not have the discretion outside that granted by regulations or statute to apply equitable doctrines, and therefore the district court properly held that the board's decision was reasonable, supported by substantial evidence, and on plaintiff's counsel candidly conceded that they do not have any cases that support their argument. We have a Supreme Court case and a Ninth Circuit case that reflect the legal argument that we're making here, which is the Supreme Court's recent decision in Auburn Regional Medical Center, which makes clear that whereas here the Secretary has regulations interpreting a deadline, that the board and the court can't go beyond that to impose equitable doctrines, and this court's Kaiser case, which reflects the fact that these types of cases are reviewed under the APA, the narrow arbitrary and capricious standard. Let me ask you, is this the usual course followed by CMS, and do you know if this has happened before, something like this has happened before, and what the result was? Well, Your Honor, if you look in the record, it's interesting to see that Thompson had a representative testify at the hearing, and in explaining what happened in this case, this is on excerpts of record, page 71, Thompson says he's made literally thousands of such submissions successfully. It also, on page 73, stated that plaintiff was the only hospital among its 400 hospitals for that quarter that was not successfully submitted. And there's publicly available data on the QualityNet database website, which shows that for, I think it's fiscal year 2009, it was over 3,400 hospitals received the full update, and very, very few didn't. It's not to say that it doesn't ever happen. It does, but it is, you know, the vast majority of the hospitals do successfully submit their data. I have a question that probably has no legal relevance, but I just am not sure I understand the system. When there's one quarter missed, and therefore this 2% reduction kicks in, can that be recouped in later quarters? In other words, does that reduction sort of follow the hospital forever? No, it's only for that fiscal year, Your Honor. So this applied only for fiscal year 2009, and so long as plaintiff complied in the next fiscal year, because the 2% reduction is in this Medicare annual payment update or market basket update, and so that would be for the payments for that fiscal year. So it's kind of a clean slate the following fiscal year. I think that's right, Your Honor. So unless the Court has any further questions. What's your response to the argument concerning the paragraph on page 6 of the board's decision at CR 36 that counsel was stressing about the board not having independent discretion? He said that wasn't the question. The question was whether the CMS had – the board was asking the wrong question when it said it independently lacked discretion. Your Honor, I think as the Supreme Court recently made clear in Auburn, the board is correct that it does not have any equitable discretion outside of what's in the regulation itself and reviewing what CMS did under its regulation. And in that paragraph, it correctly states the Federal Register does indicate that CMS has some discretion for data processing errors clearly under the control of CMS or its contractors, and the Federal Register does say that. But what the board is saying, how reading this paragraph, it appears that I think that the board is saying that though in that situation, CMS by regulation has stated that it has the discretion if, for example, through the fault of the government, the website wasn't available. If whereas here there's a third-party vendor mistake, the board doesn't have the discretion to go outside that and look at the equities and the fact that what – there's no independent equitable authority that the board has absent regulation or statute. And here, under the circumstances of this case, no such discretion is granted by either the statute or the regulations, and therefore the board was entitled to it. To either CMS or the board is what you're saying. Right. And the secretary has, under the statute itself, the secretary has the authority to promulgate regulations about the form and manner and time of the submission, and the secretary has done so. And in doing so, it has said where the error is something clearly under the control of CMS or its contractors. That would be – or so there CMS in promulgating the regulation had some discretion, but yes, once the secretary promulgated the regulation, CMS in making the reconsideration decision didn't have the discretion nor did the board because they were following the regulations set by the secretary. What about the substantial performance argument? Your Honor, the plaintiff has cited no case where a Medicare provider agreement has been interpreted according to common law or state law contract principles, which is what they're asking this court to do. In the few cases they cite where maybe the provider agreement is referred to in passing as a contract, it's telling that the courts don't apply contract doctrines in those cases. Rather, they still are looking at the applicable Medicare statutes and regulations, and we think the Supreme Court decision in Bennett makes clear that even, for example, federal grant programs are not the same, are not governed by the contract principles. And the Eleventh Circuit has specifically held in a case we cite in our brief that Medicare provider agreements are governed by Medicare statute and regulations and not by state contract law or common law contract principles. The board in this case and in other cases likes to take the position, well, even if it did apply, it doesn't apply. Is there any board case we might have missed? Is there any board case that says it never does apply, period? I couldn't find one that said that. And even if we do that all the time, we say, well, even if, because we've got an easy out anyway. So there really doesn't seem to be a ruling that says we could not possibly ever apply this. Your Honor, I think, I mean, I don't know of a cite to a board decision saying that. I would point to the fact that the board used the term assuming arguendo that substantially. So I think the backdrop of that is that the board's view is that it does not apply, but they do want, I think that's just as you said, courts often do. They say even if it did apply, the plaintiff wouldn't qualify. And for the reasons stated in our brief, we agree with that as well. But we think that the case law, and in particular looking at the Supreme Court's Bennett decision, makes clear that contract principles do not apply what the court needs to look at in interpreting the Medicare payment system is the Secretary's regulations and the Medicare statute. I guess what I'm asking is it sounds like you would like us to slam the door and say it never could happen. I'm not sure that's necessary in this case, and I'm not sure but what we should just leave the door for the board to slam someday if it wants to or for the Secretary to slam. That doesn't necessarily affect the decision in this case. It might, but I'm just wondering if we should, if you're asking us to slam that door. I think when we cite the Memorial Hospital versus Heckler decision out of the 11th Circuit, and that stands for the principle which we think we would hope this court agrees with, is that when a provider decides to participate in the Medicare program, its payments depend on the Medicare statute and its implementing regulations. And that's, I think, the key principle we would want this court to adopt. Again, we do think that the district court was correct regardless, that even if such principles applied, the district court decision is still correct. Thank you. So unless the court has any further questions, we ask that this court affirm the decision of the district court. I don't believe we have any further questions of you, and Mr. Bookman has some rebuttal time remaining. Thank you. I just wanted to respond to a couple of the cases to which the counsel referred. Memorial Hospital versus Heckler, 11th Circuit case, the court said that there was not a vested right in particular Medicare payments, allowing a retroactive application of a Medicare rule and not applying contract law principles. But there they were looking to the obligations of the governments to pay, which admittedly is set forth in the Medicare statutes and regulations. The subtle difference here, even assuming that case was correctly decided, the subtle difference here is we're looking to say, to the question of whether the hospital substantially performed. And if you look at the terms of the provider agreement, it talks about obligating the hospital to comply with the Medicare statute and regulations. So I believe that even if Memorial Hospital was correctly decided, it is distinguishable. The Bennett case, Title I, education program, not Medicare, looked at a question of whether we're going to apply contract principles in interpreting a grant or apply traditional Chevron principles to interpret a statute and decided under the facts of that case, and there were a variety of detailed facts that the justices went through to make that determination, we're applying typical administrative law Chevron standards. Again, I think that case is sufficiently far afield that it's not relevant. Auburn Memorial holds, again, unique to those facts, held that equitable tolling doesn't apply to Medicare cases. Only equitable, that's all it was looking at. It wasn't a broad decision that the board has no ability, it didn't even say the board doesn't have the ability to apply equitable principles, it just said we're not applying equitable tolling to PRB cases, because we've looked at 1395.00, the statute, and we've looked at congressional history, and it doesn't make sense to apply it here. So, again, that case doesn't have the broad holding that counsel said it does. The Kaiser case talks about whether when somebody failed to file a preliminary position paper, the standard should be excusable neglect or arbitrary and capricious as to whether that should have been accepted, and the court, not surprisingly, said it's an arbitrary and capricious standard. So, again, not a broad sweeping holding that in its appropriate circumstances equitable principles were not. Thank you. Thank you, counsel. We appreciate very much the arguments that both of you have brought today in this interesting case. The case is submitted, and we are adjourned for this morning's session.
judges: Fernandez, Graber, Murguia